## Allen *versus* Laird.

A. died, leaving a widow and three daughters. In his will, after devising his real estate to his wife for life, he continued: " And when she dies, then it is my will that said real estate be divided between my surviving daughters or their heirs, and if they cannot agree in having the land divided, then it must be sold, and each daughter have an equal part." On the death of the widow in 1881 the daughters could not agree upon a division, and the land was sold by A.'s surviving executor to B. for $4,000. B., on the same day, conveyed one-third of it to C., the husband of one of A.'s daughters, for $1,333, and the remaining two-thirds to the other heirs. C. put valuable improvements on the land, and lived there with his wife until 1853, when he died, leaving a will by which he devised all his real estate to his wife for life, and then over to his own brothers and sisters. Twenty years after his death, his widow conveyed this property to her niece D., claiming that the title in C. was a mistake, and that he held for her as trustee. At the death of the widow C.'s representative brought ejectment against D., who was in possession. *Held,* that the sale by A.'s executor under the power in the will worked a conversion of the property, and that, as the share of C.'s wife was thus converted into a chose in action, C. had a right to assert his dominion over it by purchasing a part of the original real estate with it in his own name. *Held,* therefore, that plaintiff was entitled to recover.

May 25th 1882. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

5 OUTERBRIDGE.—5

ERROR to the Court of Common Pleas of *Huntingdon county :* Of January Term 1882, No. 98.

This was an action of ejectment brought by R. A. Laird, administrator c. t. a. of Enoch Isenberg, deceased, against Sarah J. Allen and one Andrew Morder, her tenant, to recover possession of a tract of land in Potter township, containing about 120 acres. The cause was argued in this court May 23d 1881, and a re-argument being ordered by the court, the same was had May 25th 1882.

On the trial, before DEAN, P. J., the following facts appeared : Both parties claimed title through David Caldwell, who died in 1819, leaving a will which was duly proved, and contained the following clause : " As to my real estate it is my will that it be rented or leased by my executors, and my wife shall have the proceeds of it while she lives a widow, except so much of it as will be a sufficiency to maintain my mother in a decent manner while she lives, which it is my will that she shall get, and if my wife should marry, or when she dies, then it is my will, that my said real estate be divided between my surviving daughters, or their heirs, and if they can't agree in having the land divided, then it must be sold, and each daughter have an equal part, but if any of them should die without lawful issue, then their part is to be divided between the surviving daughters and their heirs."

At his death the testator was seised of a certain tract of land containing about 388 acres, of which the 120 acres in dispute were a part, and he left surviving him, a widow, Jane Caldwell, and three daughters, Ann Caldwell, who was unmarried, Elizabeth, wife of David Allen, and Sarah, who afterwards married Enoch Isenberg.

The widow, Jane Caldwell, died in 1831 in possession of the property, and an attempt was then made to apportion it between the three daughters, but after dividing the land as nearly as possible into three parts, they were unable to agree upon the allotments. The entire tract was accordingly sold by Nicholas Isenberg, Caldwell's surviving executor, and conveyed to John Piper, by deed dated May 15th 1832, for $4,000. Piper then conveyed the portion in dispute to Enoch Isenberg, the husband of Sarah Caldwell, for $1,333. Isenberg made valuable improvements on the land and lived on it with his wife until 1853, when he died, leaving a will, dated May 28th of the same year, by which he devised all his real estate to his widow for her life, and after her death to his own brothers and sisters. It was under this will that the plaintiff, R. A. Laird, claimed as administrator c. t. a. of Enoch Isenberg, and the representative of said brothers and sisters.

It further appeared at the trial that Isenberg's widow

remained on the land until 1876, when she died, having previously, by deed dated September 19th 1873, conveyed the same to Sarah J. Allen, the defendant, who was living with her and was the last lineal descendant of David Caldwell. The defendant accordingly claimed under this deed, alleging that the conveyance by the executor, Nicholas Isenberg, to Piper, and the conveyance by Piper to Enoch Isenberg, were made in pursuance of a plan, agreed upon by the devisees and the holders of the legal title, in order to make partition of the property; and that by this agreement Piper took title to the entire 388 acres, and on the same day executed three deeds (produced in evidence) by which he intended to convey three separate parcels thereof to the heirs of David Caldwell, but that, owing to a mistake of the scrivener, the share of Sarah Isenberg was conveyed to her husband Enoch, instead of to her, the consideration, $1,333, being her share of the $4,000, the nominal consideration mentioned in the deed to Piper.

The plaintiff on the other hand, introduced evidence to prove that the deed from Piper to Isenberg was not an error of the scrivener, but that Isenberg, who was childless and intended to make valuable improvements on the land, refused to do so unless the deed was made to him directly; having land in his own name immediately adjoining, on which he would otherwise make said improvements.

The defendant submitted the following points:

(1) The will of David Caldwell did not authorize Nicholas Isenberg, the surviving executor, to sell the land, and the plaintiff claiming through an alleged sale and conversion by him, he cannot recover. " The answer to this point reserved."

(2) Even if the executor had power under the will of David Caldwell to make a sale, it was only for the purpose of partition among the devisees, and the sale made by him to Piper, and the three deeds made by Piper, all dated May 15th 1832, in connection with the drafts and undisputed evidence of the actual division of the land into three parts, and possession in pursuance of such division lines, and the trust declared by Piper . . . . at the time of the execution of deed to Enoch Isenberg, the husband of one of the daughters, amounted to nothing more than a partition of the land among the devisees, and the plaintiff cannot recover. " This point is denied."

(3) If the jury believe that Enoch Isenberg paid nothing for the land, and the only consideration to him was his wife's share in the land or its proceeds, then the land would be hers and the plaintiff cannot recover.

Answer. " This point we deny, and direct a verdict for the plaintiff subject to the opinion of the court on the point reserved."

The court subsequently decided the reserved point as follows : " I am of the opinion that Nicholas Isenberg, surviving executor, had authority under the will to sell the land of the testator ; the defendant's first point is therefore denied, and it is directed that judgment be entered for plaintiff on the verdict." Judgment accordingly, whereupon the defendant took this writ assigning for error : (1) The action of the court in withdrawing the case from the jury and in directing a verdict for the plaintiff ; (2) and (3) the refusal of her points. She neglected, however, to except to the entry of judgment on the point reserved.

*Samuel J. Brown* (with whom was *John M. Bailey*), for plaintiff in error.—In itself the will of David Caldwell operates as a devise of the land to his three daughters and works no conversion : 1 Purd. Dig. 418. Myers' Appeal, 12 P. F. Smith 104. Brown *v.* Dysinger, 1 R. 408 ; Chew *v.* Nicklin, 9 Wr. 84 ; Bleight *v.* Bank, 10 Barr 131 ; Swift's Appeal, 6 Norris 502.

The contingency mentioned in the will upon which a conversion might be worked, to wit, a failure to agree upon a division, never happened. There was, therefore, no actual conversion ; the transfer of the land to Piper and from him to Isenberg, was merely in pursuance of the agreement for a division ; Caldwell's daughters occupied it as land while they lived, and not a foot was added or taken from the original tract which was simply divided among the heirs, no money being paid by any one on the division.

Enoch Isenberg took a life estate in his wife's interest by virtue of his marriage, and as to any change made by the sale or partition, he was only trustee of the remainder in fee. The relation of husband and wife requires the utmost good faith : Swisshelm's Appeal, 6 P. F. Smith 475 ; Husbands or Married Women 65 ; Kaufman *v.* Crawford, 9 W. & S. 131. If Sarah. Caldwell (Isenberg) had an interest in the land it could not be divested by a deed to her husband, nor by any possession held by him : Kinzer *v.* Mitchell, 8 Barr 64 ; Kille *v.* Ege, 29 P. F. Smith 15 ; Davis *v.* Davis, 10 Wr. 342 ; 1 Greenl. Ev. §§ 147, 148, 153.

*R. M. Speer* (with him *W. H. Woods*), for defendant in error.—David Caldwell in his will directed that if his daughters could not agree upon a division of the land, it should be sold. The evidence shows that the daughters could not agree, and the land was accordingly sold by the surviving executor, who was the proper person to execute the sale : Act Mar. 12th 1800, 3 Sm. Laws 433, Act April 22d 1856, P. L. 533 ; McDowell *v.* Gray,

5 Cas. 211; Miller *v.* Meetch, 8 Barr 417; White *v.* Taylor, 1 Yeates 422. The proceeds of this sale were personal property, and as the law then stood, Enoch Isenberg, as the husband of Sarah Caldwell, had the right to her personalty. The taking of the conveyance in his own name, the consideration for which was the property of his wife, thus received, was such a reduction of her personal estate into his possession, as vested the title to the land in him absolutely: Hannah *v.* Swarner, 3 W. & S. 231; Cowden *v.* Oyster, 14 Wr. 368; O'Hara *v.* Dilworth, 22 P. F. Smith 397; Benedict *v.* Montgomery, 7 W. & S. 238.

Mr. Justice PAXSON delivered the opinion of the court October 2d 1882.

It is now fifty years since John Piper conveyed the premises in dispute to Enoch Isenberg. The possession of the property since that time has not been inconsistent with the terms of his deed. If, as was contended by the plaintiff in error, the property belonged to the wife of Enoch Isenberg, she never asserted her right during the life of her husband, nor, as far as this record shows, made any complaint that the deed was made to him. Many years after his death, when nearly eighty years of age, and after enjoying the use of the property as devisee for life of her husband, she conveyed it by an informal deed to his niece, the plaintiff in error. The lapse of time is entitled to some weight in considering the question whether the true ownership of the premises corresponds with the face of the title papers.

Both parties claim title through David Caldwell, the father of Mrs. Isenberg. He died in 1819, and left a will, the material clause of which is as follows: "As to my real estate, it is my will that it be rented or leased by my executors, and my wife shall have the proceeds of it while she lives a widow, except as much of it as will be a sufficiency to maintain my mother in a decent manner while she lives, which it is my will she is to get, and if my wife should marry, or when she dies, then it is my will that my said real estate be divided between my surviving daughters or their heirs, and if they can't agree in having the land divided, then it must be sold, and each daughter have an equal part, but if any of them should die without lawful issue, then their part is to be divided between the surviving daughters and their heirs."

The widow, Jane Caldwell, died in 1831. An attempt was then made to divide the real estate between the three daughters of David Caldwell. This attempt failed for the reason that they could not agree upon a division. The surviving executor of David Caldwell's will then sold the real estate to John Piper for the consideration of $4,000. Piper then conveyed the

[Allen *v.* Laird.]

premises in dispute to Enoch Isenberg, the husband of one of the daughters, for the consideration of $1,333.

It was contended on the part of the plaintiff that the deeds from the executor to Piper, and from Piper to Isenberg, were for the purpose of making partition of the estate of David Caldwell among his three daughters; that no money consideration passed; that Piper was a mere trustee; and that the conveyance from Piper to Isenberg of the share of Isenberg's wife made him a trustee of the latter.

The paper book of the plaintiff does not throw much light upon this question of fact. Two pages and a half of testimony appear to have been culled out, which is most favorable to the plaintiff, and all that makes against him wholly omitted. The object of a paper book is to aid the court in arriving at the truth. The defendant in error has supplied the omission, and we thus learn that he offered evidence tending to prove that the deed to him of the land in controversy was not a blunder on the part of the scrivener; that Isenberg was childless, that he contemplated making valuable improvements upon the property, and refused to do so if the deed were taken in his wife's name; that subsequently, and after the title was placed in him, he made the improvements, consisting of a house and barn, and other buildings needed for a farm. It further appeared that he owned in his own right a tract of land adjoining, consisting of about forty acres, upon which the improvements could as well have been placed. All this is entirely consistent not only with the paper title but with the fact that his wife knew of and assented to the deed from Piper to him.

The plaintiff denied the power of the surviving executor of David Caldwell to sell the land; and that even if he had such power, it was only for the purpose of partition and division among the devisees, and that the deeds in question were but a mode of making such a partition. See second and third assignments. The ruling of the court below upon these points was free from error. The question raised upon the second assignment was reserved, and judgment subsequently entered thereon for defendant in error. No exception was taken to this judgment, and the point therefore drops out of the case: Bank of Shippensburg *v.* Lefever, 24 P. F. S. 49. The sale of the property under the power in the will clearly worked a conversion. The moment it was converted into money the husband had a right to it as the law then stood, and could assert his dominion over it either in purchasing a portion of the real estate with it, or in using it in the purchase of other real estate in his own name. The failure of the daughters to agree to make partition, and the sale of David Caldwell's real estate by the executor by reason of such failure, converted Mrs. Isenberg's share of his

[Umbenhower *v.* Miller.]

real estate into a mere chose in action, which was reduced into possession by the husband. As this appears to be all there is in the case, we need not notice the remaining assignments of error.

Judgment affirmed.